JMM:CCC
F. #2011R01096

**MJ-13-280**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT C... N.Y.

★ MAR 27 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

GERSHON BARKANY,

        Defendant.

- - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(T. 18, U.S.C., § 1343)

EASTERN DISTRICT OF NEW YORK, SS.:

      GREGORY HAGARTY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") duly appointed according to law and acting as such.

      Upon information and belief, on or about June 14, 2010, within the Eastern District of New York and elsewhere, the defendant GERSHON BARKANY did knowingly and intentionally devise a scheme and artifice to defraud investors, and to obtain money and property from those investors by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, transmits and causes to be transmitted writings, signs, signals and sounds by means of wire communication in interstate and foreign commerce,

to wit: a wire transfer in the amount of $13 million, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1343)

The source of your deponent's information and grounds for his belief are as follows:[1]

I. Background

1. I have been a Special Agent with the FBI for approximately 23 years and have participated in numerous investigations of violations of federal offenses committed using the interstate wires, United States mail and interstate carriers. For the past three years, I have been assigned to units that primarily investigate fraud offenses, including, but not limited to, mail fraud, wire fraud and violations of the federal securities and commodities laws.

2. Since June 2011, the FBI has been investigating the defendant GERSHON BARKANY. The investigation has revealed that the defendant operated a business in a manner consistent with what is commonly referred to as a "Ponzi scheme." A Ponzi scheme is a fraudulent scheme in which investors are lured to invest money in a business venture with promises of unusually high returns and/or profits from the investment. The high returns and/or profits are represented to investors to be

---

[1] Because the purpose of this affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

generated by the business ventures themselves. However, in a Ponzi scheme, the vast majority of the money returned to investors is actually money that was obtained directly from successive investors, rather than from the business venture itself. The Ponzi scheme ultimately becomes unsustainable as the returns and/or profits promised to current investors grow to exceed the amount of money obtained from new investors. Early investors in a Ponzi scheme often receive the promised profits and, sometimes, a return of their initial investment. The apparent success of the investments is later used to encourage re-investment by original investors and to recruit new investors. New investors typically make no profits and, in fact, lose their entire original investment when the scheme ultimately collapses.

3. During the course of the investigation, I identified several bank accounts used by the defendant to perpetrate the instant fraudulent scheme, including an account at Wachovia Bank (the "Wachovia Account"). According to bank records, the Wachovia Account was opened on or about February 6, 2008 by defendant GERSHON BARKANY. GERSHON BARKANY was the only signatory on that account.

II. The Scheme to Defraud

4. Between January 2009 and December 2010, the investigation has revealed that the defendant GERSHON BARKANY knowingly and intentionally engaged in fraudulent activity

involving the use of the interstate wires. As discussed in more detail below, there is probable cause to believe that the defendant induced at least five investors to give him money, which the defendant told those investors was going to be used as a down payment to purchase properties in New York that he would subsequently sell for a profit. In one instance, the defendant assured an investor that the investment was "risk free" because if he did not find a buyer, the owner of the properties would refund the investor's monies. The defendant fabricated numerous investment opportunities. The investigation has revealed that the defendant took investors' monies and paid other investors, donated it to charity, lost it gambling in Atlantic City or otherwise used it for his own benefit. In addition, according to the sworn deposition of an attorney who was involved in a transaction with the defendant, the defendant transferred approximately more than $146,000 to an account located in Israel, which appears to have been intended for use to purchase a property in Israel without the investors' knowledge. Based on immigration records, the defendant has traveled to Israel and Canada in the last three years.

5. Information provided by one particular investor is provided below.[2]

---

[2] The investigation has revealed other victims whose complaints are not detailed herein.

John Doe 1

6. John Doe 1, whose identity is known to the government, advised me that, in or about April 2010, defendant GERSHON BARKANY approached him about an investment opportunity that he claimed was "risk free." Specifically, the defendant told John Doe 1 that John Doe 1's money would be used as a down payment to purchase an office building on Madison Avenue in Manhattan (the "Madison Avenue Deal"). The defendant explained that he would find a buyer for the building who would pay a higher price before the actual closing resulting in a profit for the defendant and John Doe 1. The defendant explained that the Madison Avenue Deal was risk free because if the defendant was unable to find a buyer before the closing, the owner of the building would return the down payment. As a result, John Doe 1 gave the defendant approximately $15 million for the Madison Avenue Deal. I examined bank records and confirmed that John Doe 1 sent via wire the defendant approximately $15 million.

7. John Doe 1 also said that, in or about May 2010, the defendant approached him about another investment opportunity that he claimed was "risk free." Specifically, the defendant told John Doe 1 that John Doe 1's money would be used as a down payment to purchase properties in the Bronx and Queens (the "Queens Deal"). Like with the Madison Avenue Deal, the defendant claimed that he would find a buyer for the building who would pay a higher price before the actual closing resulting in a profit

for the defendant and John Doe 1. And similar to the Madison Avenue Deal, the defendant assured John Doe 1 that the Queens Deal was risk free because if he was unable to find a buyer before the closing, the owner of the property would return John Doe 1's money. As a result, John Doe 1 gave the defendant approximately $13 million for the Queens Deal. I examined bank records from the Wachovia Account and confirmed that John Doe 1 sent the defendant approximately $13 million. Specifically, on or about June 14, 2010, John Doe 1 sent a wire transfer in the amount of $13 million to the Wachovia Account. This wire transfer traveled in interstate commerce because it originated at a bank branch in New York and passed through the Federal Reserve's servers, which are located outside the state of New York, before reaching the defendant's account.

8. John Doe 1 also told me that, in the summer of 2010, the defendant approached him about another investment opportunity that he again claimed was "risk free." Specifically, the defendant told John Doe 1 that John Doe 1's money would be used as a down payment to purchase a hotel in Atlantic City (the "Atlantic City Deal"). Like with the Madison Avenue Deal and the Queens Deal, the defendant claimed that he would find a buyer for the hotel who would pay a higher price before the actual closing resulting in a profit for the defendant and John Doe 1, and also assured John Doe 1 that his investment would be refunded if the defendant was unable to find a buyer before the closing. The

7

defendant sent John Doe 1 documents in connection with the Atlantic City Deal. As a result, in late August 2010, John Doe 1 gave the defendant approximately $18.5 million for the Atlantic City Deal. I examined bank records and confirmed that John Doe 1 sent the defendant approximately $18.5 million.

9. During the course of the investigation, I learned that the deals discussed above did not exist. Indeed, according to John Doe 1, in December 2010, the defendant admitted to him and others that everything that the defendant said about the Madison Avenue Deal, Queens Deal and Atlantic City Deals was a fraud. According to John Doe 1, the defendant admitted that there were no deals and that all the documents that he had provided to John Doe 1 were false. To date, John Doe 1 alone has sustained a loss of approximately $46.5 million in funds given to John Doe 1.

10. On August 1, 2011, the defendant signed an affidavit in connection with a civil lawsuit in which the defendant admitted that he had defrauded John Doe 1 and others. Specifically, the defendant affirmed that:

> [I, GERSHON BARKANY,] repeatedly engaged in fraudulent and unauthorized practices and conveyances which victimized [investors]. [I, GERSHON BARKANY,] employed a variety of means in this fraud, including the solicitation of funds for real estate and loan transactions which . . . were not as represented or altogether non-existent. . . [I, GERSHON BARKANY,] also solicited these parties to participate in various real estate transactions involving commercial or

8

residential properties. The loans and real estate transactions were generally shams, fabricated by [me, GERSHON BARKANY,] to serve as a vehicle to separate [investors] from their money. Often, [I, GERSHON BARKANY,] would take the documents from legitimate transactions [I, GERSHON BARKANY,] had been involved in, and doctor them by changing the names, properties and other information and present them to potential investors for use in wholly or partially fictitious transaction. On other occasions, [I, GERSHON BARKANY,] would obtain or find documents from law firms under false pretenses and use them to create the illusion of a real and legitimate "investment opportunity." . . . While some of the earlier transactions did produce returns, when the transactions did not do so, [I, GERSHON BARKANY,] would resort to reporting fictitious or falsely inflated returns, making some payments and, on certain occasions, trying to get [investors] to roll over payments into new transactions. In reality, their money had been used to pay off other creditors or was otherwise misappropriated by [me, GERSHON BARKANY,]. . . . In connection with these transactions, creditors would pay [me, GERSHON BARKANY,] or one of [my] entities directly, or were directed to make a wire transfer to an attorney escrow account at a law firm [I, GERSHON BARKANY,] used for many of the transactions. . . . From time to time [I, GERSHON BARKANY,] would have checks issued to [investors] as full or partial payment of principal, interest and/or other amounts. On certain occasions, [investors] would redeposit these checks for [my] benefit in new or other transactions based on [my] false reports of successful results. On other occasions, [I, GERSHON BARKANY,] solicited new funds from [investors]. [I, GERSHON BARKANY,] then used these funds and additional monies from other parties to make payments, thus encourage new "investments." [I, GERSHON BARKANY,] also paid himself millions of dollars for generating these results.

9

WHEREFORE, your deponent respectfully requests that the Court issue an arrest warrant so that defendant GERSHON BARKANY may be dealt with according to law.

Because premature disclosure of the contents of this Complaint and Affidavit in Support of Arrest Warrant would jeopardize an ongoing investigation and could result in flight of the defendant and destruction of evidence, it is further requested that this Affidavit and accompanying arrest warrant be sealed and remain under seal until further order of the Court.

_____
GREGORY HAGARTY
FBI

Sworn to before me this
27th day of March, 2013

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK