

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

CCC
2010R02238

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

April 9, 2012

<u>Via Hand and ECF</u>

Honorable A. Kathleen Tomlinson
United States Magistrate Judge
Eastern District of New York
Central Islip, New York 11722

        Re: United States v. Gershon Barkany
           <u>Magistrate Docket No. 13 MJ 280</u>

Dear Judge Tomlinson:

      The government respectfully submits this letter to provide new facts that the government learned since the defendant was arrested, which the government believes are relevant to today's detention hearing.  Specifically, the government learned that in addition to the $50 million fraud detailed in the criminal complaint, the defendant also defrauded two additional investors of $7.5 million and was engaged in that fraud up through the date that he was arrested.  The details of that fraudulent scheme are set forth below.

      On March 28, 2013, the defendant was arrested and had his initial appearance before Your Honor.  At the detention hearing, the government asked the Court to enter a permanent order of detention on the ground that the defendant posed a risk of flight.  <u>See</u>  3/28/13 Hearing at 4-5.  In opposition, defense counsel argued that the defendant was not a flight risk and noted that the allegations contained in the criminal complaint were several years old.  <u>See</u> 3/28/13 Hearing at 5 ("I would point out to Your Honor that these allegations date back several years.  And the very things that the Government argues or uses to argue for detention, that he signed an affidavit, that he confessed to a number of people, indicate, I think, strongly, that he's not a flight risk.  These charges and these acts took place several years ago, when he had access to significant funds.").

      The Court entered a permanent order of detention without prejudice holding "I believe that there are [conditions or series of conditions that could insure his return to court].

2

However, I haven't heard anything yet by way of a proffer that's sufficient under these circumstances with regard to the amount of a bail package sufficient to alleviate the concerns that I have and that have also been expressed by the Government." Id. at 12. In so holding, the Court stated "I also understand from the information provided today by defense counsel that the defendant has signed a confession of judgment. It is some period of time having elapsed with regard to these specific allegations. And so it's a close question here, frankly, whether he is a flight risk." Id.

Since the detention hearing, the government has learned that the defendant was engaged in a more recent fraud in which he created fictitious documents, forged people's signatures and succeeded in defrauding two additional investors of approximately $7.5 million. The details are provided below.

John Doe 2, whose identity is known to the government, advised the government that, in or about January 2013, Barkany approached him about an investment opportunity that he claimed was "risk free." Specifically, like he did in the fraudulent schemes documented in the criminal complaint, Barkany told John Doe 2 that John Doe 2's money would be used as a down payment to purchase an office building on 53rd Street in Manhattan (the "53rd Street Deal"). Barkany explained that he would find a buyer for the building who would pay a higher price before the actual closing resulting in a profit for Barkany and John Doe 2. Barkany explained that the 53rd Street Deal was risk free because if Barkany was unable to find a buyer before the closing, the owner of the building would return the down payment. As a result, according to John Doe 2, he gave Barkany $4 million for the 53rd Street Deal. John Doe 3, whose identity is known to the government, also gave Barkany an additional $3.5 million for the 53rd Street Deal.

John Doe 2's and John Doe 3's investments were supposed to be held by a third-party escrow agent and were only to be disbursed to purchase the 53rd Street property. In that regard, Barkany told John Doe 2 that First American Title Insurance Company ("First American") was going to be the escrow agent for the 53rd Street Deal and that all communications with First American would go through Barkany. Barkany gave John Doe 2 a document that purported to be an escrow agreement between First American and John Doe 2. That document was purportedly signed by First American. First American did not sign that document. Indeed, the government has spoken to a representative of First American who confirmed that First American did not sign that

agreement nor was it retained to act as an escrow agreement for the 53rd Street Deal.

In addition to lying that he had retained First American to be the third-party escrow agent for the 53rd Street, creating fictitious documents and forging First American's signature, the defendant also falsely told John Doe 2 and John Doe 3 that the seller of the 53rd Street property had orally agreed to sell the property to Barkany and he created more fake documents to assist him in deceiving John Doe 2 and John Doe 3. Specifically, Barkany sent John Doe 2 a document that purported to be a letter of intent memorializing the oral agreement. The government spoke to representatives of the 53rd Street building who advised the government that it had never seen that letter of intent. They further informed the government that while Barkany had inquired about purchasing the 53rd Street building, they never agreed to sell the building to Barkany. Moreover, according to representatives of the 53rd Street building, they have not had any discussions with Barkany regarding the building since February 2013.

The defendant also created a fake purchase agreement and forged the signature of the owner of the 53rd Street building. Indeed, in March 2013, Barkany sent John Doe 2 a document that purported to be a purchase agreement for the 53rd Street building. That document was purportedly signed by the owner of the 53rd Street building. According to representatives of the 53rd Street building, they did not sign that agreement.

Finally, the government has learned that the $7.5 million that John Doe 2 and John Doe 3 gave to Barkany, which was supposed to be held by an escrow agent and was only to be used to purchase the 53rd Street building, is gone. According to a representative of TD Bank, the TD bank account where John Doe 2 and John Doe 3 sent their investment has a zero balance. Gershon Barkany was the sole signatory on that account. The government has not yet been able to trace what the defendant did with those monies.

Based on this additional information and for all the reasons set forth in the government's initial detention letter,

dated March 28, 2013, and the reasons discussed at the March 28, 2013 bail hearing, the Court should deny the defendant's bail application.

                                      Respectfully submitted

                                      LORETTA E. LYNCH
                                      United States Attorney

                         By:        /s/
                                      Christopher Caffarone
                                      Assistant U.S. Attorney

cc:    Bruce Barket, Esq.

Case 2:13-cr-00362-LDW-ARL   Document 15   Filed 04/09/13   Page 4 of 4 PageID #: 86