ABRAHAM GROHMAN
CORTLAND REALTY INVESTMENTS, LLC
178 Grandview Avenue
Monsey, New York 10952

June 9, 2016

BY ECF AND FEDEX:

Hon. Leonard D. Wexler
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York  11722

Re:   United States of America v. Gershon Barkany, No. 13-CR-00362

Dear Judge Wexler:

    I understand that Your Honor will soon be sentencing Gershon Barkany.  I am writing to advise the Court of the manner in which Mr. Barkany took advantage of the trust that I placed in him and embezzled more than $40 million of my funds.

    I met Mr. Barkany in late 2009.  The trust that I placed in him was due in large measure to the good impression that he made upon me and the recommendations I received on his behalf from a prominent rabbi in my community, Mr. Barkany's uncle by marriage, Jonathan Zelinger, and a philanthropist in the community who is also a victim of Mr. Barkany's Ponzi scheme.

    In January 2010, Mr. Barkany requested a short term loan of approximately $3.8 million. I made the loan, and he made payments as he had agreed to do.  When he subsequently asked for a $1.1 million loan, I agreed to make that loan.  Both loans appeared to be performing as promised, so I later lent him (through one of the entities he controlled) $15 million for one real estate transaction, $15.525 million for another real estate transaction and finally $18.5 million in August 2010 for the purchase of an Atlantic City hotel/casino.  At Mr. Barkany's request, I wired the $15 million and $18.5 million loans to a lawyer's trust account, which, again, increased my comfort in entrusting Mr. Barkany with my funds.  Mr. Barkany also assured me that the law firm would form a limited liability company of which I would have majority control, that the funds I advanced would go into the limited liability company and that the limited liability company would then invest in the Atlantic City hotel/casino. The transaction appeared real to me in part because I was aware that the Borgata hotel/casino in Atlantic City was mentioned in the media as possibly being for sale.  Of course, none of these transactions were real.  And while I had thought that a law firm would not allow its trust account to be used in this way, I later learned

Hon. Leonard D. Wexler
June 9, 2016
Page 2

that almost as quickly as I wired funds to the law firm, the funds were wired out as instructed by Mr. Barkany.[1]

Of the almost $54 million in total that I advanced to Mr. Barkany and his entities, only about $8.9 million was returned before the Ponzi scheme was uncovered.

Mr. Barkany says that he has "cooperated" with his victims and asks Your Honor to take that into account. I urge Your Honor to take this claim with the same "grain of salt" as Mr. Barkany's other statements. Although for the first couple of years Mr. Barkany assisted in turning over certain funds and securities and in recovering some "low hanging fruit," his cooperation was selective. Large amounts of money remain missing without satisfactory explanation, and for the most part his cooperation ceased when he was arrested in March 2013.[2] Little of significance has been turned over or identified by him since then. We also subsequently learned that even after Mr. Barkany claimed to be cooperating, he secreted millions of dollars so that they would not be reached by creditors.

Mr. Barkany claims that he has returned some $32 million to his victims. This is a gross exaggeration, as my attorneys pointed out to Your Honor in letters dated June 27 and June 30, 2014 (Docket Nos. 68 and 71). Items listed by Mr. Barkany have not been delivered, and the values of some delivered items have been exaggerated. Although these deficiencies were pointed out to Mr. Barkany, he did not correct or modify these misstatements. Instead he chose to attack his victims' right to address the Court (Docket No. 70).

Additionally, at the same time that Mr. Barkany was trying to appear cooperative, he was also actually working against the collection efforts of his creditors. For example, when my attorneys took action to recover from his family and friends, Mr. Barkany was completely unwilling to assist and appeared to be working behind the scenes to aid them in hampering our efforts. These persons and entities financed Mr. Barkany's fraudulent activities and received millions of dollars of creditors' money. In early 2014, we commenced an action against Joseph Rosenberg (Mr. Barkany's father-in-law), Mr. Zelinger (Mr. Barkany's uncle by marriage) and two legal entities associated with them. To stymie that and other actions, Mr. Rosenberg, together with two other purported creditors against whom we had also commenced actions, filed an involuntary chapter 7 bankruptcy petition against Mr. Barkany in this District.[3] We asked Mr.

---

[1] Some of the funds were in the firm's account for only a matter of minutes. My attorneys subsequently discovered that the law firm had given its controller signature authority on its trust account, which I am told violates rules of professional responsibility, and, unbeknownst to me, the controller was also employed by Mr. Barkany. It is unclear whether any of the lawyers in the firm or the controller authorized the wires.

[2] After my attorneys learned in early 2011 that Mr. Barkany had lost large amounts at the Borgata casino, Mr. Barkany "voluntarily" excluded himself from that casino. But while he was purporting to be cooperating, he returned to the Borgata in 2012, lost millions more and covered those losses with funds wired to the casino from an account in the name of Mr. Barkany's wife and an IOLTA account in the name of a lawyer with whom he apparently had a relationship. We are uncertain of the sources of those funds, but it seems that Mr. Barkany could instead have used them to make additional restitution to his victims.

[3] The involuntary chapter 7 petition, No. 14-72941-las, was presented to the Bankruptcy Court by Mr. Rosenberg's counsel, who has taken the lead in opposing our and other victims' efforts in the bankruptcy proceeding.

Hon. Leonard D. Wexler
June 9, 2016
Page 3

Barkany to oppose this bad faith attempt by his father-in-law to stay our actions, since our investigation indicated that Mr. Rosenberg and at least one of the other purported petitioning creditors, and perhaps the third, did not hold eligible claims. To the contrary, Mr. Barkany's father-in-law is liable to creditors for a substantial sum of money. Nevertheless, Mr. Barkany refused to oppose his father-in-law's eligibility. He reluctantly challenged the eligibility of a different purported creditor, but he subsequently suddenly withdrew that challenge even though we had evidence supporting it. The involuntary bankruptcy filing has stymied our efforts to collect from Mr. Barkany's relatives and others for almost two years.

It has now been more than five years since the Ponzi scheme was revealed, and the passage of time makes additional recovery less likely. It is apparent that I may not recover even half of what Mr. Barkany stole.

Despite community pressure to remain silent, I feel compelled to share my views and experiences with the Court. Mr. Barkany caused great loss to many people, and his crimes should not be quietly swept under the rug.

I regret having to write this letter. I get no pleasure from the prospect of a young man spending years of his life in prison. But society must be protected from Mr. Barkany. The following is most telling to Mr. Barkany's true character. In December 2010 he acknowledged his initial Ponzi scheme and could have reformed himself and possibly avoided prison. He had a young wife and child and it would seem that he would have done everything possible to avoid prison so that he could be with his young family and have a life with them. Instead, in February and March 2013, Mr. Barkany perpetrated another fraud, stealing millions more. It appears that the lure of the big score was more important to Mr. Barkany than the needs of his young wife and child. Mr. Barkany cannot help himself. If he is not in prison, he will not be able to restrain himself, and others will be injured.

I know that sentencing criminals, especially non-violent young men, must be one of the more difficult aspects of Your Honor's role in our criminal justice system. I am confident, though, that you will arrive at a just result. Thank you for taking the time to read this letter.

Respectfully submitted,

Abraham Grohman